[Civ. No. 9265. First Appellate District, Division One.—January 31, 1935.]

FRED N. MORCOM, Appellant, v. SAN FRANCISCO SHOPPING NEWS (a Corporation), Respondent.

O. G. Foelker and J. H. McKnight for Appellant.

Daniel A. Ryan, Thomas C. Ryan, Breed, Burpee & Robinson, Sloss, Turner & Finney and James W. Harvey for Respondent.

JAMES, J., *pro tem.*—We are invited, by this appeal, to examine a judgment for the defendant, rendered by the court below after sustaining a general demurrer to plaintiff's complaint and after the plaintiff had failed to avail himself of the granted permission to amend.

The complaint, so successfully assailed, attempts to state a cause of action for libel. It alleges that the plaintiff is a member and president of the city council of Oakland, *ex-officio* mayor of that city and a candidate for Congress; that the defendant is a corporation, engaged in publishing and distributing, gratis, an advertising weekly of some ten or more loose sheets, called "Oakland Shopping News", which are left at the doorsteps, porches and yards, entrances and vestibules of residences and apartment houses in Oakland and other adjacent communities, and which are quite generally read by the public; that in six different issues of this publication, defendant printed and published the several articles complained of, in which, it is alleged, said defendant had printed "with malice, knowingly, false and unprivileged statements and representations with the intent and design to injure, disgrace and defame plaintiff, to expose plaintiff to hatred, contempt, ridicule, obloquy". It further alleges that there was introduced and under consideration before the city council of Oakland, during this period, a proposed ordinance, which is set forth as an exhibit to the complaint, and which is designed to prohibit the throwing or placing or scattering of hand-bills, samples, dodgers, cards or other advertising matter upon public or private property, etc.

The complaint then details the contents of the alleged libelous articles, and pleads the meaning of the same as designed and intended by defendant and as read and understood by readers of the publication. The several articles are set forth, also, *in haec verba,* in exhibits B, C, D, E, F and

G, attached to the complaint. They all have reference to the attitude of the plaintiff, as mayor, toward the ordinance pleaded, as above recited, and form a series of articles attacking the action and impugning the motives of plaintiff with respect to that ordinance, from which the conclusion is drawn, by the pleading, that the plaintiff was actuated in his official capacity, as mayor and member of the council, by selfish, unworthy and dishonest motives having to do with his candidacy for Congress.

As the articles, when considered together, as they should be, would unduly extend the length of this opinion, we will content ourselves with the above general statement as to their character. Suffice it to say, for the purpose of this opinion, these articles, as pleaded, if false and if unprivileged, would fall within our statutory definition of libel, as exposing the plaintiff to hatred, contempt, ridicule or obloquy, etc. (Civ. Code, sec. 45.)

The ground upon which the demurrer was sustained and the judgment so rendered is that the publication was privileged; but it is contended by appellant that the allegations of actual malice, with a prayer for punitive damages, will not admit of the raising of the issue of privilege by demurrer.

The contention is also made that, because the "Oakland Shopping News" does not come within the legal definition of a newspaper, it is not entitled to claim the publication as privileged. This contention may at once be disposed of. The law recognizes no special privilege in a newspaper. The privilege of a newspaper is in nowise different from that of any citizen of the community. (*Snively* v. *Record Publishing Co.*, 185 Cal. 565 [198 Pac. 1].)

Section 47 of the Civil Code defines five classes of publications which are declared to be privileged. The claim of privilege in the instant case is made under subdivision 3 of that section, which defines the privilege thereby protected as one made "in a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information". When one offers himself for public office, or

occupies a position of public trust, he is held to have proffered himself for public investigation, and his conduct is open to public criticism, as it is for the interest of society that his acts may be freely published with fitting comments or strictures. This right, of course, does not warrant aspersive attacks upon the motive or character of the officer.

A newspaper, or other publication, or privite citizen, within proper limit, may express opinions and indulge in criticism upon the character or qualifications of public officers and candidates for public office.

Inasmuch as the articles complained of dealt primarily with the alleged ordinance, it may well be argued that the privilege of the publication would find support in the quoted subdivision of the section for another reason. The effect of the ordinance in question would be to prohibit, or, at least, seriously hamper, the continued operation of the distribution of the publication. The subject of the articles complained of would, therefore, be a communication by the defendant (who would naturally be interested therein because it vitally affected its business) to its readers (who would be interested therein because of the information they derived of shopping bargains, sales, etc., which they obtained without cost from their perusal of such publications).

But, in order that the privilege accorded by subdivision 3 of section 47 of the Civil Code, be available, it must appear that the publication was made without malice. If it be made to appear that the defendant acted with malicious intent, in uttering the libel, it cannot successfully invoke the protection of this privilege.

Ordinarily the question of privilege is a matter of defense. (*Taylor* v. *Lewis,* 132 Cal. App. 381 [22 Pac. (2d) 569].) The burden is on the defendant to allege and prove, primarily, the privileged character of the publication, including the absence of malice. (*Taylor* v. *Lewis, supra; Snively* v. *Record Publishing Co., supra; Longsworth* v. *Curson,* 56 Cal. App. 489, 497 [206 Pac. 779].)

Where, however, these defensive elements appear clearly on the face of the complaint, the necessity of their being set up by way of answer no longer exists, for two reasons: 1st—because the complete defense to the action is thereby

confessed; and, 2d—because the complaint thereby fails to state an actionable libel; that is, an unprivileged one.

It will, therefore, seem clear that before the defendant, relying on this class of qualified privilege, can be relieved of the necessity of pleading it by answer, the complaint must show that the conditions under which the utterance complained of was made, were such as to bring it within the particular class of privilege claimed, and that the same was without malice.

In the instance of a false and unprivileged utterance, which is libelous *per se,* malice is presumed; and the plaintiff need neither allege nor prove it. But where the publication is claimed to be privileged, no malice is presumed; but it is incumbent on the defendant, as a part of the privilege, to show the absence of malice. This he may do by demurrer, if it appears on the face of the complaint, or by answer and proof, if it does not.

The absence of malice is an essential element of the privilege; and in the presence of malice, the privilege does not exist. The law does not accord to anyone the privilege of publishing maliciously a false and defamatory statement concerning another.

It will be understood, of course, that we are, in this opinion, dealing only with the qualified privilege defined in subdivision 3 of section 47 of the Civil Code.

The complaint in the instant case clearly sets out circumstances under which the alleged libel was uttered, which, if the publication was without malice, would render it privileged. The sole question, then, presented by this appeal, is whether or not the absence of malice in the publication sufficiently appears on the face of the complaint. If it does, the ruling of the lower court was sound and the judgment must be affirmed; if not, the judgment must be reversed, and the defendant put upon his defense in the court below.

The complaint here alleged that the defendant "did print with malice, knowingly, false and unprivileged statements and representations *with the intent and design to injure, disgrace and defame plaintiff, etc.".* (Italics ours.) This would appear to be quite a definite allegation of actual malice.

In *Davis* v. *Hearst,* 160 Cal. 143 [116 Pac. 530], the subject of malice is extensively discussed; and actual malice, as applied to the law of libel, is there defined as "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy, or injure another"; and " . . . the motive and willingness to vex, harass, annoy, or injure". The allegations above quoted fully respond to the test of these definitions.

Respondent cites *Taylor* v. *Lewis, supra,* as authority for the proposition that to allege the publication was made "maliciously" is but stating a mere conclusion. With this we have no quarrel; but the cases are not analogous. The pleader in the instant case has not contented himself with a bare conclusion, as was the case in the cited authority; but has pleaded the motives actuating the publication. He pleads, in effect, that the defendant, with malice, published the false and defamatory statements, knowingly (i. e.: knowing them to be false and defamatory), and with the intent and design to injure, disgrace and defame plaintiff. This is not a mere conclusion; it is a clear and definite allegation of actual malice.

But, it is further contended, allegations of malice will not avail the pleader, if the character of the publication complained of is inconsistent with such allegations. This is so obvious as to require little comment.

In the case of *Eva* v. *Smith,* 89 Cal. App. 324 [264 Pac. 803, 804], this court approved a ruling of the lower court sustaining a demurrer to the complaint, without leave to amend. But there, while actual malice was alleged, the publication itself, was a mild, dignified and obviously sincere expression of opinion as to the merits of several candidates for election to the office of city council of San Mateo. Mr. Presiding Justice Tyler there said: "Taking the article as a whole, it seems clear to us that it amounts to no more than a criticism of plaintiff's qualifications for office and one which defendant was entitled to make. No malversation on the part of plaintiff is charged. On the contrary, the article states that for his associates, of whom plaintiff was one, defendant held the kindest personal regards, but by reason of lack of zeal and temperament neither incumbent should be returned to office."

The later case of *Taylor* v. *Lewis, supra,* applied the same principle as was laid down in *Eva* v. *Smith, supra,* with regard to a similar character of publication and under very similar circumstances. In that case, too, the defendant expressed his kindly personal feeling toward plaintiff. But in this latter case, there were no definite allegations of actual malice; and the decision must be regarded as controlled primarily by that consideration.

The publications complained of in these cases are not to be compared with those counted on in the cause before us. In the latter, as pleaded directly and through innuendo, the plaintiff is accused of falsehood, deception and chicanery; of improperly using his office of mayor and member of the city council to further his political ambition for a national office; of being a tool of a group of newspapers; of being improperly influenced in his official action as mayor and member of the city council, by considerations of his own personal interests. These articles were neither dignified, temperate, nor harmless. It cannot be said, with reason, that they carry, in themselves, a refutation of the direct allegation of actual malice found in the complaint.

We are of the opinion that the complaint states a cause of action, and that the demurrer thereto was improperly sustained.

Accordingly, the judgment appealed from is reversed and the cause remanded, with instructions to the court below to overrule the demurrer to the complaint, and permit the defendant to answer.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 1, 1935.

Curtis, J., and Thompson, J., voted for a hearing.