[Civ. No. 25830. Second Dist., Div. Two. Aug. 8, 1962.]

JOSEPH W. FAIRFIELD, Plaintiff and Appellant, v. JESSE A. HAMILTON et al., Defendants and Respondents.

Joseph W. Fairfield, in pro. per., Ethelyn F. Black and Frank C. Wickhem for Plaintiff and Appellant.

Jesse A. Hamilton, in pro. per., for Defendants and Respondents.

HERNDON, J.—On July 7, 1958, Joseph W. Fairfield, appellant, brought this action in two counts against Jesse A. Hamilton, Evert L. Hagan, Charles M. Farrington, Matthew W. McClean and Robert O. Ahlstrom, alleging that they (1) had combined and conspired to defame and injure him; and, in pursuance of a preconceived plan, had prepared and mailed false and defamatory letters; and (2) had filed such legal proceedings against him as amounted to a malicious abuse of process. McClean was not served. Appellant and Farrington executed a covenant in which appellant covenanted not to sue Farrington further in the action. The action went to trial

before a jury against the defendants Ahlstrom, Hagan and Hamilton.

On February 16, 1961, at the conclusion of plaintiff's case, the trial court granted a nonsuit in favor of Ahlstrom. The jury returned a verdict against Hagan on both counts, assessing the compensatory damages for libel in the amount of $250 and punitive damages of $5,000; they assessed $1,000 as the compensatory damages for abuse of process and allowed punitive damages of $10,000. Hagan's motion for a new trial was granted "on the ground of insufficiency of the evidence to justify the verdict and decision and said verdict and decision is against law." The verdict against Hamilton assessed plaintiff's compensatory damages on his libel cause of action in the sum of $250 and allowed him nothing either on the cause of action for abuse of process or for punitive damages on the libel cause of action.

Plaintiff appeals: (1) from the judgment of nonsuit in favor of defendant Ahlstrom; (2) from the order granting the motion of defendant Hagan for a new trial; and (3) from "so much of said judgment which is in favor of the defendant Hamilton on the Second Cause of Action of plaintiff's complaint."

On May 23, 1951, Flintridge Heights, Inc., a California corporation, was adjudicated a bankrupt in the United States District Court. The plaintiff was appointed attorney for the original trustee in this proceeding and later reappointed attorney for a successor trustee. The principal asset of the bankrupt was a tract of undeveloped property comprising approximately sixty acres.

The difficulties which have produced such a tragic and wasteful volume of litigation between the parties to this action all appear to have stemmed from what we may generously term the very remarkable and most unfortunate terms of the sale of this real property which was made in 1955 by the then trustee. The trustee, *with plaintiff acting as his attorney,* sold the property to three individuals named Naylor, Byers and King for $138,000. Plaintiff testified that he could not recall having obtained any credit report on these purchasers. The terms of sale provided for payment by the purchasers of $40,000 in cash, the balance of $98,000 to be evidenced by a promissory note secured by deed of trust *covering only a portion of the tract.*

The amazing order approving this sale provided that *ten acres were to be excluded from the trust deed and that these*

*ten acres "shall be selected and designated by the buyers and shall be their sole concern and not the concern of the Trustee."* (Emphasis added.) The purchasers then selected a number of lots *spread throughout the tract* totalling approximately ten acres. The trustee conveyed these lots to the purchasers *unencumbered.* It appears that the cash payment of $40,000 was *borrowed* by the three purchasers from one Dwight Anderson and that to evidence this loan they gave him a note secured by a deed of trust *on the lots which were excluded from the purchase money trust deed theretofore given the trustee in bankruptcy.*

Naylor, Byers and King formed a corporation known as Flintridge Highlands, Inc. (not to be confused with Flintridge Heights, Inc.) and conveyed to it the purchased property, *except the lots which they had taken in fee from the trustee.*

The buyers made no payment on either note. Anderson, the lender of the $40,000 used to make the down payment to the trustee, exercised his power of sale under his deed of trust on the ten acres covered thereby and, by purchase at the foreclosure sale, acquired title to these lots. Plaintiff unsuccessfully sought to prevent this foreclosure, and, in an affidavit filed in connection therewith, alleged that it had become apparent that the purchase of the tract by Byers, King and Naylor had been a promotional venture previously arranged between said buyers and Anderson, and that the severance of the tract which Anderson's foreclosure would accomplish would greatly decrease the value of the tract *with the portion retained by the trustee having the lesser value.* This statement was later shown to be correct by the sale by the trustee of his reclaimed portion for $35,000.

The trustee, in lieu of exercising the power of sale conferred upon him by his trust deed, obtained the consent of the referee to proceed by way of judicial foreclosure. Flintridge Highlands, Inc., was *not* made a party to the foreclosure action, *nor was a title report obtained to determine whether or not any transactions affecting the title to the property had occurred since the sale.* Plaintiff handled this foreclosure suit in his capacity as attorney for the trustee.

On January 10, 1956, a decree of foreclosure was entered, and on February 9, 1956, the property was sold to the trustee at execution sale for $25,000, and a deficiency judgment was entered in favor of the trustee and against the three purchasers in the amount of $77,296.55. One year thereafter, the statutory period of redemption expired and the commissioner who

conducted the sale issued a deed to the trustee. However, Flintridge Highlands, Inc., the corporation formed by Naylor, Byers and King, in the meantime, had become indebted to defendant Hagan for approximately $10,000. Hagan reduced this obligation to judgment and levied on the same portion of the tract which, as previously indicated, stood of record in the name of Flintridge Highlands, Inc. He received a marshal's conveyance, dated April 21, 1958.

Thereafter followed a prolonged series of legal maneuvers and counter-maneuvers on the part of defendant Hagan and his attorney, defendant Hamilton, and the trustee in bankruptcy and his attorney, plaintiff herein. It is manifestly apparent that *personalities* soon became hopelessly confused with *principles*. The proceedings included, *inter alia,* petitions to redeem the property; quiet title actions filed by defendants in both the state and federal courts; orders to show cause in re contempt, instituted by plaintiff in the bankruptcy court; malicious prosecution actions in the municipal and superior courts filed by defendants as a result of the contempt citations, etc., etc. As might be anticipated, nothing was accomplished by these proceedings but an increase in the ill will existent among the combatants.

Apparently in order to improve his tactical position, defendant Hagan sought to purchase creditors' claims and shares in another corporation for which plaintiff acted as attorney, known as Benedict Heights, Inc. Hagan, acting through defendant Farrington, an employee, purchased a claim against the bankrupt corporation and then filed a creditor's petition in the bankruptcy proceeding seeking to remove plaintiff as attorney for the trustee. Defendants Hagan, Hamilton and Farrington acquired shares of stock in Benedict Heights, Inc., and thereafter various proceedings were instituted by them seeking to compel transfers of stock certificates and to obtain orders for the inspection of the books and records of said corporation. Appeals resulted from a number of these proceedings, including *Hagan* v. *Gardner,* 283 F.2d 643; *Hagan* v. *Fairfield,* 183 Cal.App.2d 703 [7 Cal.Rptr. 248] ; *Farrington* v. *Fairfield,* 194 Cal.App.2d 237 [16 Cal.Rptr. 119] ; and *Hagan* v. *Superior Court,* 53 Cal.2d 498 [2 Cal.Rptr. 288, 348 P.2d 896].

This court has no intention of being drawn into an unnecessary recital of the history of this prolonged and vexatious litigation beyond the point required in order to pass upon the issues presently before us. We feel that the summary of the

proceedings involved in the history of the present action as above set forth is sufficient for this purpose.

It was against this inflamed background that defendant Hagan wrote letters to the creditors of the bankrupt corporation on July 9, 1957, and on July 15, 1957, wherein he charged plaintiff with mishandling the real property sale described above, and further charged that plaintiff had performed numerous legal services that were unnecessary and made statements from which it might be inferred that this was for the purpose of enlarging his fees.

We shall first consider plaintiff's appeal from the nonsuit granted upon defendant Ahlstrom's motion. ▓▓▓ The granting of a nonsuit is "warranted when, and only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference that may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff." (16 Cal.Jur.2d, § 48, p. 214.) ▓▓▓ As stated in *Wilson* v. *Southern Pacific R.R. Co.*, 62 Cal. 164, 172: "Such an order should not be made, unless there is no evidence at all, or a mere scintilla of evidence wholly insufficient for the consideration of the jury. . . ."

▓▓▓ The evidence produced at the trial pertaining to Ahlstrom was extremely limited. Plaintiff testified that he had no knowledge of any fact indicating that Ahlstrom either had participated in the composition or mailing of the allegedly defamatory letters or that he even knew of their existence. Ahlstrom was not a party to any of the legal proceedings taken against plaintiff. Plaintiff contends, however, that the participation of Ahlstrom in the conspiracy could be inferred from the fact that Ahlstrom knew Hamilton and had been represented by him and that he had transferred his stock in Benedict Heights, Inc., to Hagan, Hamilton and Farrington under "peculiar" circumstances, including his being assured at the time that he would not be involved in any trouble as the result of his sale of the stock.

Bearing in mind the applicable rules of law, we hold that the trial court properly granted Ahlstrom's motion for a judgment of nonsuit. The only evidence of his association with the other defendants is that stated above. There is no evidence from which a jury reasonably could have inferred that there was a mutual understanding between Ahlstrom and those participating in the actions which plaintiff alleges to have been

improper. There is no evidence of direct participation by Ahlstrom in any unlawful action. "A conspiracy may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. [Citation.]" (*Globe Dairy Lunch Co.* v. *Joint Executive Board of Culinary Workers,* 117 Cal.App.2d 190, 193 [255 P.2d 94]; *Jones* v. *American President Lines, Ltd.,* 149 Cal.App.2d 319, 322-323 [308 P.2d 393].) But here there is no proof of any interest or of any action on the part of Ahlstrom from which his participation in the alleged conspiracy could be inferred. The evidence concerning his associations at best would suffice as a basis for nothing more than possible suspicion. (See *Dandini* v. *Dandini,* 120 Cal. App.2d 211, 217-218 [260 P.2d 1033].)

*The Order Granting Hagan's Motion for a New Trial*

The trial court granted Hagan's motion for a new trial, "as between him and plaintiff only on the ground of insufficiency of the evidence to justify the verdict and decision and said verdict and decision is against law." It denied Hamilton's motion for a new trial.

 The controlling rules on an appeal from an order granting a new trial on the ground of insufficiency of the evidence to justify the verdict are set out in *Yarrow* v. *State of California,* 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687], at pages 434-435, as follows:

"In considering the sufficiency of the evidence on the hearing of a motion for new trial it is the exclusive province of the trial court to judge the credibility of the witnesses, to determine the probative force of testimony and to weigh the evidence, and it may draw reasonable inferences therefrom opposed to those drawn by the trier of fact at the trial. [Citations.] It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse an order granting a new trial on this ground. [Citations.] Error is not presumed and the burden is upon the plaintiffs herein to affirmatively show its presence in the record [citations]; or a manifest and unmistakable abuse of discretion. [Citations.]"

Plaintiff contends, regarding his cause of action for libel, that there was no evidence whatsoever to support a verdict for defendant Hagan. If our consideration of the order were restricted solely to the question of proof that a libel had been

published, this contention might deserve further consideration.
However, the ground of insufficiency of the evidence to justify the verdict extends *to the quantum of the damages* as well as to the issues relating to defendant's liability. (*Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 361 [170 P.2d 465].) Even if it were conceded that the issue as to the publication of a libel had been established, our review of the evidence herein still would not lead us to a ruling that the court abused its discretion in granting the motion for a new trial.

Further, as stated by the Supreme Court in the *Ballard* case, *supra,* at page 361: "It has long been the settled rule in this state that the statement of the ground of the order granting a new trial does not preclude the reviewing court from considering the entire record on the appeal from the order. The review is not restricted to a consideration of the ground mentioned in the order. In fact it is the duty of the court on appeal to consider the entire record upon which the order was based to discover whether there is any error which would have justified the trial court in making the order, and if so the order will be sustained although the grounds urged on the motion (with the exception of the ground of insufficiency of the evidence) were not specified in the order. [Citations.]"

In the instant case, defendant Hagan's motion specified all the legal grounds and, *inter alia,* stressed the asserted error of the trial court in refusing to permit him to amend his answer to set up the affirmative defenses of truth and privilege. Since a defendant in a libel action can neither defend on the ground of truth, nor offer proof thereof by way of mitigation, unless he has affirmatively pleaded such matter (*Davis* v. *Hearst,* 160 Cal. 143, 187-195 [116 P. 530]), depriving the defendant of the opportunity so to do in an appropriate case would undoubtedly prevent him from having a fair trial. (*Vick* v. *Grasser,* 169 Cal.App.2d 692, 700-701 [338 P.2d 223]; cf. *Pinkston* v. *Lieb,* 48 Cal.App.2d 352, 354 [119 P.2d 1010].) While defendant's right to make such an amendment might not have been clear to the court prior to the completion of such testimony as was admitted, thereafter its propriety should have been patent and the granting of a new trial would be the most logical and practical method of correcting this error.

Whether defendant Hagan upon retrial could prove the truth of his charges, or that they were privileged, need not now be determined. In view of the most unusual nature of the real estate transaction above referred to, the many court appear-

ances resulting therefrom and the very substantial fees which plaintiff sought and obtained for such appearances, a full and complete defense should have been allowed, especially where, as the result of his inability to establish facts in mitigation the jury found defendant Hagan guilty of actual malice and answerable for punitive as well as compensatory damages.

The second cause of action is for *abuse of process*. It is to be noted at the outset that plaintiff does not attempt to recover on the theory of malicious prosecution. The complaint fails to allege necessary elements of such an action; and plaintiff, contending that it was outside the issues, objected to the introduction of evidence offered by defendants to show probable cause. Plaintiff argues that a cause of action for abuse of process was alleged and proved by him and that there is no evidence to support a contrary verdict in favor of Hagan.

"It has been observed by the courts on several occasions that the elements necessary for an action for abuse of process are not clearly defined, either by the cases or by writers on the subject. The reason apparently is that the term has been used as a label for a variety of dissimilar situations which have in common only the fact that actionable injury was inflicted in connection with the use of judicial process and under such circumstances that the narrowly circumscribed action of malicious prosecution was inapplicable. Thus the term has been applied to cases of excessive execution on a judgment, attachment for a greatly excessive amount, unnecessarily oppressive conduct in connection with the arrest of person or property, and an extortion of property by threat of criminal prosecution. . . ." (1 Cal.Jur.2d, § 5, pp. 213-214, and see decisions cited.)

We here make special reference to the decision in *Spellens* v. *Spellens*, 49 Cal.2d 210 [317 P.2d 613], at pages 230-234, where our Supreme Court comprehensively discusses the elements of the tort here under consideration and quotes at length pertinent language from Prosser on Torts (2d ed.), page 667. There is abundant evidence from which conflicting inferences might be drawn as to whether Hagan had an ulterior or improper purpose in prosecuting the numerous actions instituted by him. In spite of evidence of his enmity toward plaintiff, it reasonably could be inferred from the circumstances either (1) that he acted with legitimate motives or (2) that he committed no improper acts in the use of the legal processes in the regular course of the proceedings. ■ There is no liability where the defendant has done nothing more than

carry the process to its authorized conclusion, even though with bad intentions. (*Spellens* v. *Spellens, supra,* page 232.)

There was no direct evidence that Hagan ever offered to desist in his various actions if plaintiff changed his position in regard to Hagan's claims regarding the property involved in the bankruptcy proceedings. Therefore, we cannot say that the trial court abused its discretion herein even though there was evidence from which it could have been inferred that one of the factors leading Hagan to pursue one or more of the proceedings was his animosity toward plaintiff. While a final end to all the harrowing litigation between the parties hereto is a "consummation devoutly to be wished," we are not called upon here to decide whether or not the judgment rendered against Hagan could have been sustained, but only whether or not the trial court abused its discretion. We hold that it did not.

Hagan asserts numerous errors of law which he raised in support of the motion and which he contends were sufficient in themselves as grounds for the granting of a new trial. In view of our decision as above stated, it is unnecessary for us to discuss the additional supporting grounds for the ruling urged by defendant.

### The Judgment in Favor of Hamilton

As we have indicated previously, the jury's verdict on the second cause of action assessed no damages against Hamilton, while it assessed compensatory damages of $1,000 against Hagan. Hamilton filed a cross-appeal from the judgment, from an order denying his motion for judgment notwithstanding the verdict, and from an order denying his motion to tax costs. Hamilton's appeal was subsequently dismissed. The judgment is now final as to the first cause of action, inasmuch as plaintiff appeals only from that part of the judgment "favorable" to Hamilton on the second cause of action. His contention is that it was error for the jury to award him no compensatory damages, inasmuch as Hagan and Hamilton were joint tort-feasors. There is no merit in the assertion.

Plaintiff's contention is based upon the argument that the verdicts as returned indicated a decision in his favor and against Hamilton on both counts. However, as we shall show, the Hamilton verdict reflects a finding for plaintiff on the first count and for Hamilton on the second. One form of verdict as submitted to the jury read: "We, the jury in the above entitled action, find for the plaintiff Joseph W. Fairfield and against the defendant Jesse A. Hamilton and assess his

compensatory damages on his first cause of action for libel in the sum of $_____ and assess his compensatory damages on the second cause of action for abuse of process in the sum of $_____ and assess his punitive damages on the first cause of action for libel in the sum of $_____ and assess his punitive damages on the second cause of action for abuse of process in the sum of $_____ *and find for the defendant Evert L. Hagan against the plaintiff Joseph W. Fairfield on both causes of action."* (Emphasis added.)

The other form was provided for use in the event of a verdict in favor of plaintiff and against defendant Hagan. It was identical in style and concluded as follows: "*[A]nd find for the defendant Jesse A. Hamilton and against the plaintiff Joseph W. Fairfield on both causes of action.*" (Emphasis added.)

In both instances, the jury struck out the concluding clauses of the verdict forms which we have italicized in the above quotations, and thereby indicated very clearly that they did not find for either defendant on *both* causes of action. In the verdict relating to defendant Hamilton, the jury inserted $250 as compensatory damages on the first cause of action and inserted "None" in each of the other spaces provided. Manifestly, the clear intendment of the verdicts as returned is that the jury found defendant Hamilton not liable for punitive damages on plaintiff's first cause of action and not liable, either independently or as a joint tortfeasor or conspirator, on the second cause of action.

All reasonable inferences will be indulged on appeal to support, rather than defeat, a jury's verdict and the judgment rendered thereon; and in construing a verdict, reference may be had to the pleadings, the evidence and the court's charge. (*Snodgrass* v. *Hand,* 220 Cal. 446, 448-449 [31 P.2d 198].) Since defendant Hamilton was not a party plaintiff in the many actions filed by defendant Hagan, and represented him as his attorney in only part of them, we cannot say that the findings of the jury were unsupported by the evidence.

Finally, it must be held that plaintiff is in no position now to assert error in the *form* of the verdict as to Hamilton because the record shows that plaintiff made no objection whatsoever in this regard at the time the verdict was returned. (*Brown* v. *Regan,* 10 Cal.2d 519, 523 [75 P.2d 1063].)

The judgment of nonsuit in favor of defendant Ahlstrom,

the judgment in favor of defendant Hamilton, and the order granting defendant Hagan's motion for a new trial are, and each is, affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied September 4, 1962, and appellant's petition for a hearing by the Supreme Court was denied October 2, 1962.