[Civ. No. 17160.   Second Dist., Div. Three.   Apr. 25, 1950.]

WESLEY D. FREEMAN, Appellant, v. WILLIAM MILLS et al., Defendants; THOROUGHBRED RACING PROTECTIVE BUREAU, INC., Respondent.

Elwood Bowles and Brown & Gilbert for Appellant.

James V. Brewer for Respondent.

VALLÉE, J.—Appeal by plaintiff from a judgment of non-suit in an action to recover damages for libel.

Plaintiff, 57 years of age, has been employed nearly all his life as an assistant starter of horse races at various courses throughout the country. During the 1946-1947 racing season, conducted by Los Angeles Turf Club at its Santa Anita race-course, plaintiff was employed as an assistant starter under the supervision of starter William Mills. At the conclusion of the season Mills told plaintiff he "expected him back next year." Plaintiff then worked as assistant starter at Thistle Down and River Downs racecourses in Ohio.

In 1947, defendant Thoroughbred Racing Protective Bureau, Inc., referred to as defendant, was a nonprofit corporation organized and maintained by about 34 major racecourses throughout the United States for the purpose of conducting investigations for such courses. It served only its members. Its purpose was to foster horse racing and its proper conduct, to investigate employees and prospective employees, to investi-gate matters which the courses wanted investigated, and fur-nish them with information with respect thereto. Los Angeles Turf Club was a member of defendant Protective Bureau and paid defendant about $24,000 a year for its services. Carleton F. Burke was director of racing and presiding steward for Los Angeles Turf Club and also a director and vice-presi-

dent of defendant Protective Bureau. As presiding steward he was interested in any information he might obtain as to any proposed employee, and he wanted defendant to furnish him any information it might have—"that is what they are for." Defendant did not make recommendations; it only made reports. Assistant starters at Santa Anita were employed subject to Burke's approval and all employees were screened very carefully.

About November 20, 1947, defendant sent the following written communication to Burke as director of racing:

"THOROUGHBRED RACING PROTECTIVE BUREAU, INC.

FILE No. 11-8   ORIGIN OF INVESTIGATION   CHICAGO

TITLE WESLEY FREEMAN—Assistant Starter

CHARACTER OF CASE   ELEVEN

"It was ascertained from confidential informant T-1 that an assistant starter who worked with FREEMAN at the Thistle Down meeting at Randall Park allegedly made the statement that he wished he had been interviewed by the TRPB regarding WESLEY FREEMAN. It was indicated by T-1 that this assistant starter, if he could be located, would be willing to furnish information to the TRPB concerning Freeman's alleged unethical practices. This same informant advised that an assistant starter who worked with FREEMAN was at the Churchill Downs meeting and there was a possibility that this assistant starter was identical with the person referred to above.

"Information from MR. REUBEN WHITE, starter at Churchill Downs, reflects that the person referred to by T-1 who was attending the Churchill Downs meeting was EDWARD LEE FAULKNER. It should be noted that a lead is set forth in referenced report for the Baltimore Office to interview ED FAULKNER relative to the activities and conduct of WESLEY FREEMAN at River Downs. This lead is being restated for the Miami Office since it was ascertained that FAULKNER intends to go to Florida and will probably be an assistant starter at Gulfstream. It was ascertained that FAULKNER's social security number is 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 and that he worked at the Ohio tracks and was at the Churchill Downs meeting in Kentucky. The above information was not obtained from MR. WHITE until the last few days of the meeting at Churchill Downs and subsequent to that time MR. FAULKNER was not available for interview. Accordingly, the lead is set forth for FAULKNER to be interviewed in Florida.

"T-1 advised the writer that he had discussed instant matter with Starter REUBEN WHITE. WHITE was very reluctant to discuss the matter and indicated that FREEMAN was one of the best assistant starters in the business but that he had heard a number of rumors about FREEMAN's conduct and activities and was of the opinion that FREEMAN was the type of individual who might readily have been involved in furnishing batteries to jockeys, etc. It should be noted that WHITE did not state that he had any knowledge of FREEMAN having done anything unethical and in fact stated that he had not observed FREEMAN commit any violation of the rules of racing.

## "UNDEVELOPED LEADS

### "THE MIAMI OFFICE

"Will locate and interview EDWARD LEE FAULKNER, Assistant Starter, concerning information in his possession relative to the activities and conduct of WESLEY FREEMAN at River Downs and Thistle Down, it being noted that FAULKNER will probably be employed at Gulfstream.

"Will attempt to ascertain from EDWARD LEE FAULKNER the identity of all the assistant starters employed at River Downs and Thistle Down at the time FREEMAN was employed in a similar capacity.

### "THE CHICAGO OFFICE

#### "At New Orleans, Louisiana

"Will discreetly interview Starter REUBEN WHITE regarding any knowledge he has of FREEMAN's activities at Thistle Down and River Downs.

### "CONFIDENTIAL INFORMANT

"Confidential Informant T-1:

"JACK YOUNG, Steward representing the Kentucky State Racing Commission

| Report made by | Report made at | Date of Report |
|---|---|---|
| C. E. PERRIN LLG | Chicago, Illinois | 11/20/47 |

Period covered
10/21; 11/14/47

"Los Angeles 1 cc—Carlton F. Burke, Dir. of Racing Santa Anita 12/2/47

T. R. P. B.   LOS ANGELES   DEC 1   1947   FILE No. 11-11-9

INITIALS F"

As a result of the receipt of this communication by Burke, plaintiff was not employed the next racing season by Los Angeles Turf Club. The next race meet was too near to permit an investigation of the contents of the communication, and Burke did not want to employ plaintiff whether he was guilty or not.

Plaintiff pleaded that the publication was false. Defendant denied that it was false and pleaded that it was privileged. Motions of the defendants for judgments of nonsuit were granted. Plaintiff appeals from the judgment in favor of Thoroughbred Racing Protective Bureau, Inc.

Plaintiff asserts that: the communication is libelous *per se*; a qualified privilege is defeated by the existence of malice; an inference of malice arises from "the internal character of the communication," and the course of conduct pursued by defendant; the communication is false. Defendant says that: the communication is not libelous *per se*; it was privileged and the privilege was not defeated by the existence of malice; no inference of malice can be drawn from the evidence; and the truth or falsity of the communication is immaterial.

Civil Code, section 45, in part, reads: "Libel is a false and unprivileged publication by writing, . . . which has a tendency to injure him [any person] in his occupation." Section 45a, in part reads: "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face." Section 47 reads: "A privileged publication . . . is one made— . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." Section 48 reads: "In the case provided for in subdivision 3 of the preceding section, malice is not inferred from the communication."

A publication must be false *and* unprivileged in order that it shall constitute a libel. (*Snively* v. *Record Publishing Co.*, 185 Cal. 565, 574 [198 P. 1].) The court below, for the purpose of the motion for judgment of nonsuit, was required to, and we must, treat the publication as false. Plaintiff testified that he had never in his life furnished a battery to a jockey.

Whether a publication is libelous on its face is a question of

law. (*Howard* v. *Southern Cal. etc. Newspapers,* 95 Cal.App. 2d 580, 584 [213 P.2d 399].)  ▉  The publication obviously is libelous on its face. It is defamatory of plaintiff without the necessity of explanatory matter. The words used tended directly to injure plaintiff in his occupation. (See *Oberkotter* v. *Woolman,* 187 Cal. 500 [202 P. 669]; *Maher* v. *Devlin,* 203 Cal. 270, 275 [263 P. 812]; *Layne* v. *Kirby,* 208 Cal. 694 [284 P. 441]; *Bates* v. *Campbell,* 213 Cal. 438, 441 [2 P.2d 383]; *Licke* v. *Mitchell,* 7 Cal.2d 599 [61 P.2d 922]; *Washer* v. *Bank of America,* 21 Cal.2d 822, 827 [136 P.2d 297, 155 A.L.R. 1338]; *Rosenberg* v. *J. C. Penney Co,.* 30 Cal.App.2d 609, 613, 620 [86 P.2d 696]; 16 Cal.Jur. 45, § 19; 6 A.L.R.2d 1008.) The language is not susceptible of an innocent interpretation. (See *Brewer* v. *Second Baptist Church,* 32 Cal.2d 791 [197 P.2d 713]; *Washer* v. *Bank of America,* 21 Cal.2d 822, 828 [136 P.2d 297, 155 A.L.R. 1338]; *Locke* v. *Mitchell,* 7 Cal.2d 599, 601, 602 [61 P.2d 922]; *Adams* v. *Cameron,* 27 Cal.App. 625 [150 P. 1005, 151 P. 286].)

A publication may be privileged though false. (*Snively* v. *Record Publishing Co.,* 185 Cal. 565, 574 [198 P. 1]; *Jones* v. *Express Pub. Co.,* 87 Cal.App. 246, 257 [262 P. 78].) If the occasion and the relations between the one making the charge and the one to whom it is made are such that the publication would be privileged, the right of the publisher to write is complete and unqualified, except that he must write "without malice." (*Snively* v. *Record Publishing Co.,* 185 Cal. 565, 576 [198 P. 1].) Where the facts and circumstances under which a defamatory publication is made are not disputed, the question of privilege is one of law. (*Carpenter* v. *Ashley,* 148 Cal. 422, 423 [83 P. 444, 7 Ann.Cas. 601]; *Adams* v. *Cameron,* 27 Cal.App. 625, 638 [150 P. 1005, 151 P. 286]; *Jones* v. *Express Pub. Co.,* 87 Cal.App. 246, 256 [262 P. 78].)  ▉  The evidence is without conflict that the publication in the present case was a communication made to a person interested therein by one who stood in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, and also by one who had been requested by the person interested to give the information. (Civ. Code, § 47, subd. 3.) It was privileged if made "without malice." (*Harris* v. *Curtis Publishing Co.,* 49 Cal.App.2d 340, 349 [121 P.2d 761]; *Heuer* v. *Kee,* 15 Cal.App.2d 710, 714 [59 P.2d 1063]; *Longsworth* v. *Curson,* 56 Cal.App. 489 [206 P. 779]; Rest., Torts, §§ 595,

596; 33 Am.Jur. 127, § 128 et seq.; 3 A.L.R. 1654; 11 A.L.R. 1014.)

Where it appears without conflict that the publication, if made without malice, was a privileged communication to an interested person within the meaning of section 47, subdivision 3, malice becomes the gist of the action and it must exist as a fact before the cause of action will lie. (*Locke* v. *Mitchell*, 7 Cal.2d 599, 602 [61 P.2d 922].) In the cited case it was said, p. 602: "[W]hile in the case of a false and unprivileged publication, libelous *per se*, malice is implied, and lack of it is a matter of defense, which need not be pleaded (*Gilman* v. *McClatchy, supra* [111 Cal. 606 (44 P. 241)]; *Snively* v. *Record Pub. Co.*, 185 Cal. 565 [198 P. 1]), this is not true of a qualified privilege, for section 48 of the Civil Code expressly declares that 'malice is not inferred from the communication or publication' in the cases provided for in subdivisions 3, 4 and 5 of section 47 [now only subdivision 3]. Hence, where the complaint discloses a case of qualified privilege, no malice is presumed and in order to state a cause of action the pleading must contain affirmative allegations of malice in fact." (See also *Jackson* v. *Underwriters' Report, Inc.*, 21 Cal.App.2d 591, 593 [69 P.2d 878]; *Glenn* v. *Gibson*, 75 Cal.App.2d 649, 660, 661 [171 P.2d 118].)

It affirmatively appeared in the proof of plaintiff's case that the communication was qualifiedly privileged. Hence, malice is not presumed; and, in order to establish a cause of action, it was necessary that plaintiff prove the existence of malice. Malice defeats the privilege. The privilege may be lost if the defendant has no reasonable grounds for believing his statements to be true. It may also be lost if the publication is motivated "by any cause other than the desire to protect the interest for the protection of which the privilege is given." (*Brewer* v. *Second Baptist Church*, 32 Cal.2d 791, 797 [197 P.2d 713].)

The question then is whether there is any evidence which would have supported a finding by the jury that defendant was motivated by a malicious or other improper motive or published its charges without reasonable grounds for believing them to be true.

" 'Actual malice' is that state of mind arising from hatred or ill will toward the plaintiff; . . ." (Civ. Code, § 48a, subd. (d); *Hearne* v. *De Young*, 132 Cal. 357, 361 [64 P. 576]; *Davis* v. *Hearst*, 160 Cal. 143, 157-160 [116 P. 530]; *Gudger* v.

*Manton,* 21 Cal.2d 537, 543 [134 P.2d 217].) The fact that the publication was false does not necessarily import malice. (*Emde* v. *San Joaquin County etc. Council,* 23 Cal.2d 146, 161 [143 P.2d 20, 150 A.L.R. 916].)

Plaintiff argues that "malice arises from the internal character of the communication." Malice may not be inferred from the fact alone of the communication of a defamatory statement. (Civ. Code, § 48; *Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 799 [197 P.2d 713].) While the tenor of the statement may be evidence of malice (*Brewer* v. *Second Baptist Church, supra*), there is nothing in the communication of November 20, 1947, indicating that defendant was actuated by hatred, ill will, spite, ill feeling, a desire to do harm for the satisfaction of doing it, or lack of good faith; or that defendant did not have reason for believing its statements to be true; or that it was motivated by any cause other than the desire to protect the interest of Los Angeles Turf Club.

It is also argued that malice may be inferred from the fact that defendant did not forward any communication to Los Angeles Turf Club from November 20, 1947, to the date of trial, December 6, 1948, "either confirming, verifying, denying, modifying, explaining or exonerating" plaintiff, and that the courses at which the alleged misconduct took place were not members of defendant. It cannot reasonably be inferred from these facts that the defendant acted maliciously in sending the communication of November 20, 1947.

Plaintiff does not suggest that there was any other evidence of malice and we have found none. Although the complaint did not directly allege malice, it did allege that the publication of November 20, 1947, was made "without probable cause to believe it true." The record is barren of evidence to support this allegation.

█ It is contended that the court erred in not admitting in evidence a communication dated November 4, 1947, from defendant to Los Angeles Turf Club. The contention is made without argument. The report is headed "Wesley Freeman —Assistant Starter." Plaintiff's name is not otherwise mentioned in the communication. It has to do only with an attempt to ascertain the whereabouts of a horse owner named Skully. There is nothing opprobrious in the communication or anything defamatory, derogatory or in any way libelous of plaintiff. At the time the communication was offered in evidence plaintiff's counsel stated "There is no charge in that particular one definitely against Mr. Freeman." Malice may

be established by direct proof of the state of mind of the person, or by evidence from which its existence may be inferred. The evidence must bear on the course of conduct of the defendant toward the plaintiff from which the existence of malice reasonably may be inferred. (*Snively* v. *Record Publishing Co.*, 185 Cal. 565, 577 [198 P. 1].) There is nothing in this publication which tends to prove the state of mind of defendant toward plaintiff, or having a logical tendency to prove that the publication of November 20, 1947, was prompted by malice, or ''tending to show a malicious and vindictive attitude of mind'' toward the plaintiff. (*Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 361, 362 [184 P. 672, 12 A.L.R. 1007].) The court did not err in not admitting the communication of November 4, 1947, in evidence.

In view of the fact that it appeared affirmatively without contradiction from the proof of plaintiff's case that the publication was privileged, the court properly granted the motion for judgment of nonsuit.

Affirmed.

Shinn, P. J., and Wood, J., concurred.

A petition for a rehearing was denied May 19, 1950, and appellant's petition for a hearing by the Supreme Court was denied June 22, 1950.