[Civ. No. 32793.    Second Dist., Div. Two.    June 12, 1968.]

COLUMBIA BROADCASTING SYSTEM, INC., et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; HILDA ROLFE, Real Party in Interest.

14

Lillick, McHose, Wheat, Adams & Charles, Anthony Liebig and Michael E. Meyer for Petitioners.

No appearance for Respondent.

Rosenfeld, Meyer & Susman and Norman H. Garey for Real Party in Interest.

McCOY, J. pro tem.*—This is a proceeding for a writ of prohibition restraining the Superior Court for Los Angeles County from enforcing an order requiring petitioners to answer four interrogatories. We have concluded that the writ should issue with respect to three of the interrogatories and should be denied as to the fourth.

There is pending in the respondent court an action brought by Hilda Rolfe against petitioners Columbia Broadcasting System, Inc., and Plautus Productions, Inc., hereafter referred to as CBS and Plautus, respectively, and against certain individuals wherein she seeks to recover damages for plagiarism, breach of implied in fact contract, and breach of trust and confidence. Her complaint is based on her claim that one two-part episode in a series of television shows known as ''The Defenders'' broadcast by CBS over its television stations copies and uses a script, and the ideas, characters, characterizations, plot, theme and story line contained therein, which she had previously submitted to petitioners. It is admitted that Plautus produced the television series which was later telecast by CBS over its stations. It is conceded by petitioners that plaintiff submitted her alleged literary property to petitioner CBS on at least three occasions before

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

the episode was produced and broadcast. "The Defenders" television series consisted of 132 one-hour filmed episodes broadcast weekly during four television seasons.

The return to the alternative writ includes a general demurrer and an answer to the petition. In our opinion the petition does set forth facts which warranted the issuance of an alternative writ, and also sets forth facts which, when considered with the record as a whole constitute adequate grounds for the issuance of a peremptory writ. The demurrer is accordingly overruled.

▮ We note preliminarily that the interrogatories involved here were included in the first set served on petitioners September 19, 1967. After both petitioners filed their objections to the first set of interrogatories,[1] plaintiff noticed a motion for an order compelling petitioners to answer the interrogatories. This was the proper procedure to test the validity of the objections. (Code Civ. Proc., § 2030, subd. (a); *Coy* v. *Superior Court,* 58 Cal.2d 210, 220-221 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678].) On November 14, the court granted the motion as to some of the interrogatories, including those involved here and ordered "Further answers to be served and filed within 15 days from notice."[2] At the same time the court denied the motion as to certain other interrogatories "without prejudice to serving proper limited interrogatories." Plaintiff served notice of the order on November 14. The second set of interrogatories, served November 15 as permitted by this order, did not repeat the interrogatories involved here. Plautus served its answers to both sets of interrogatories on December 28, 1967, at which time it made specific objections to interrogatories 38, 39, 46, 47 and 49 contained in the first set. Apparently CBS obtained an extension of time within which to answer both sets. While CBS has not yet answered the interrogatories, it appears from the record here that both sides agreed that when CBS

---

[1]Petitioners' objections to these interrogatories were on the grounds "that the bulk of these form interrogatories addressed to each of said three defendants are repetitive and seek a vast amount of hard-to-compile information which is totally irrelevant to the subject matter involved in the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Further, said interrogatories in their entirety are improper because they are annoying, oppressive, burdensome and harrassing."

[2]In our opinion this order did not preclude defendants from objecting to specific interrogatories in lieu of answering such interrogatories, as permitted by Code of Civil Procedure, section 2030.

answered, it would also make the same objections to those five interrogatories. On receipt of Plautus' answer plaintiff noticed a motion for an order compelling both petitioners to answer the five interrogatories referred to. On January 22, 1968, the court denied the motion as to interrogatory 38,[3] and granted it as to interrogatories 39, 46, 47, and 49, and ordered petitioners to answer those interrogatories within 45 days. The petition before us was filed February 20.

Interrogatories 39, 46, 47, and 49, and the specific objections of Plautus read as follows:

Interrogatory 39: ''Please list by date, names of parties, and title and nature of agreement, each and every written agreement to which you are a party or ever have been a party in connection with the production, financing, and/or distribution of an episode or episodes of 'The Defenders' television series called 'The 700 Year Old Gang.' '' Answer: ''This interrogatory is objected to on the ground that it calls for a vast amount of information, some of which is confidential, which has no bearing on the subject matter of this litigation and is not likely to lead to the discovery of admissable [sic] evidence.''

Interrogatory 46: ''Please state and identify by the name of the source, by date of receipt and by amount each item of income, revenue, and gross receipts which you have received in connection with the episode or episodes of 'The Defenders' television series entitled 'The 700 Year Old Gang', listing also by date, names of parties and title and nature of document, each written contract, agreement or other document which would evidence or furnish a basis for such information.'' Answer: ''Defendant objects to this interrogatory on the ground that it is not relevant to the subject matter of the litigation, not likely to lead to the discovery of admissable [sic] evidence, and calls for confidential information.''

Interrogatory 47: ''Please state and identify by name of the payee, by date of accrual or expenditure, and by amount

---

[3]Interrogatory 38 and the objection thereto read: ''38. Please list by date, names of parties, and nature and title of agreement, each and every written agreement to which you are a party or ever have been a party in connection with the production, financing, and/or distribution of the television series known as 'The Defenders'.'' Answer: ''This interrogatory is objected to on the ground that it calls for a vast amount of information, some of which is confidential, which has no bearing on the subject matter of this litigation and is not likely to lead to the discovery of admissable [sic] evidence.''

each and every item of cost which you have expended or incurred in connection with the episode or episodes of '.The Defenders' television series entitled 'The 700 Year Old Gang', listing also by date, names of parties, and title and nature of document each written contract, agreement, or other document which would evidence or furnish a basis for such information.'' Answer: ''Defendant objects to this interrogatory on the ground that it is not relevant to the subject matter of the litigation, not likely to lead to the discovery of admissable [sic] evidence, and calls for confidential information.''

Interrogatory 49: ''Please state the amount of profit which you have realized to date in connection with the episode or episodes of 'The Defenders' television series entitled 'The 700 Year Old Gang'.'' Answer: ''Defendant objects to this interrogatory on the ground that it is not relevant to the subject matter of the litigation, not likely to lead to the discovery of admissable [sic] evidence, and calls for confidential information and is not susceptible of answer as profit and loss was not, and could not be, calculated with respect to individual episodes of the series.''

In order to dispose of the matter expeditiously, we shall treat the matter as it was treated in the respondent court, that is, as though CBS had also filed its objections to the five interrogatories, since plaintiff's motion was directed to both defendants, the court's order applies to both of them, and the same issues are involved.

Plaintiff's motion for an order requiring defendants to answer interrogatories 38, 39, 46, 47 and 49 was made under section 2030 of the Code of Civil Procedure. At the hearing of such a motion the burden is on the party interrogated, in this case the defendants, ''of showing facts from which the trial court might find that the interrogatories were interposed for improper purposes.'' (*Coy* v. *Superior Court,* 58 Cal.2d 210, 220 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678].) In short, the burden is on defendants to show that their objections are valid.

We are aware that ''The statute does not require any showing of good cause for the serving and filing of interrogatories.'' (*Coy* v. *Superior Court, supra,* at p. 220.) However, in deciding a motion under section 2030 the trial court must, of necessity, consider not only the stated objections to the interrogatories, but also the interrogatories themselves, as well

as the pleadings,[4] and the contentions of the interrogating party as to the purpose and validity of the interrogatories. If the interrogatories stray too far and seek information which cannot reasonably serve the acknowledged purposes of pretrial discovery, the motion should be denied. ■ We are, of course, aware of the rule that the discovery statutes must be construed liberally so that they may accomplish their purpose. (*Greyhound Corp.* v. *Superior Court*, 56 Cal.2d 355, 378 [15 Cal.Rptr. 90, 364 P.2d 266].) Nevertheless, "if interrogatories are reasonably subject to objection as calling for the disclosure of matters so remote from the subject matter of the action as disclosed by the issues framed by the pleadings as to make their disclosure of little or no practical benefit to the party seeking the disclosure or if to answer them would place a burden and expense upon the parties to whom the interrogatories are propounded which should be equitably borne by the propounder or if the interrogatories are so framed as to require the disclosure of relevant as well as irrelevant matter, the trial court in the exercise of its discretion may refuse to order such interrogatories answered. An appellate court may not substitute its judgment for that of the trial court unless there is no room for the exercise of discretion by that court." (*Ryan* v. *Superior Court,* 186 Cal.App.2d 813, 817 [9 Cal. Rptr. 147].) In short, as Justice Murphy said for the court in *Hickman* v. *Taylor,* 329 U.S. 495, 507 [91 L.Ed. 451, 460, 67 S.Ct. 385], "discovery, like all matters of procedure, has ultimate and necessary boundaries."

As to each of the four interrogatories involved here, numbers 39, 46, 47 and 49, defendants objected on the ground that they called for information which is not relevant to the subject matter of the action, and which is not likely to lead to the discovery of admissible evidence. ■ Discovery by way of deposition (Code Civ. Proc., § 2016) or by interrogatories (Code Civ. Proc., § 2030), is limited in scope by the provisions of section 2016 which provides in part in subdivision (b) that the deponent "may be examined regarding any matter, not privileged, which is relevant to the subject matter

---

[4] "There is no merit at all in the assertion that interrogatories should not be answered merely because they pertain to the pleadings. In the ordinary usage of the phrase, every factual issue must 'pertain to the pleadings' or be subject to a claim of irrelevancy. . . . [I]nterrogatories, in order to be proper, must, of necessity, 'pertain to the pleadings.' " (*Singer* v. *Superior Court,* 54 Cal.2d 318, 323 [5 Cal.Rptr. 697, 353 P.2d 305].)

involved in the pending action, whether it relates to the claim or defense of the examining party, or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.''

Although plaintiff's complaint is not before us, it appears from the record that the subject matter of the pending litigation is plaintiff's claim against the petitioners and certain individual defendants arising out of their alleged plagiarism of her original script, ideas, characters, characterizations, plot and theme story which were allegedly used and copied in a certain two-part episode in a television series broadcast by CBS. Her claims, set forth in separate causes of action, are for compensatory and punitive damages for plagiarism, breach of implied in fact contract, breach of trust and confidence, and inducement for breach of trust and confidence.

Interrogatory 39 calls on petitioners to list, by date, names of parties, and its title and nature, every agreement to which they are or have been parties ''in connection with the production, financing, and/or distribution of an episode or episodes of 'The Defenders' television series called 'The 700 Year Old Gang.' '' In support of their objection in the trial court, defendants contended that the two-part episode which is the basis of plaintiff's claim was but one of 132 episodes in the series broadcast over a period of four years. They also called attention to the fact that it is common knowledge in the television industry that there are usually dozens, if not a hundred contracts pertaining to any given series, including those relating to its production, financing, and distribution. They argued from this premise, which was not challenged by plaintiff, that the information called for by this interrogatory was not relevant to the limited subject matter of plaintiff's claims for damages based on defendants' acts in relation to but one episode of the series. With this we agree.

In support of her motion plaintiff contended, as she contends here, that an answer to interrogatory 39 is necessary in her attempt ''to discover the existence and identity of documents disclosing the nature of the relationships between the defendants or the defendants and others, pursuant to which

the television series was produced in order to ascertain the bases of liability and who therefore may be responsible for copying and use of plaintiff's script and other materials, and also to discover the legal basis for the economic facts related to the production of 'The Seven Hundred Year Old Gang' which are material to determining plaintiff's damages.''

We shall comment later on the relevancy of the information sought by interrogatory 39 insofar as it relates to damages. It is enough to say here, to paraphrase *Ryan* v. *Superior Court, supra,* 186 Cal.App.2d at page 819, that it is self-evident that this interrogatory requires defendants to incur unnecessarily a considerable expense of time and money in listing all contracts relating to the production, financing and distribution of the 132-episode series, many of which would doubtless have no relevance to the subject matter of the pending litigation.

The respondent court refused to require defendants to identify, in answer to interrogatory 38, every written agreement to which they were parties in connection with the production, financing and/or distribution of the series as a whole. Defendants' objections to interrogatory 39 seem equally valid. As defendants point out, that interrogatory would require them to list virtually all their agreements with banks, insurance companies, unions, performers, production personnel and studios, as well as with writers, equipment rental firms, costumers, etc. We fail to see how such a conglomerate mass of information would in any way serve the acknowledged purposes of pretrial discovery, however liberally we interpret the rules. As the court said in *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 383-384 [15 Cal.Rptr. 90, 364 P.2d 266], a trial court ''In the exercise of its discretion the court should weigh the relative importance of the information sought against the hardship which its production might entail. . . .'' As we see it, interrogatory 39 calls ''for the disclosure of matters so remote from the subject matter of the action as disclosed by the issues framed by the pleadings as to make their disclosure of little or no practical benefit to the party seeking the disclosure.'' (*Ryan* v. *Superior Court,* 186 Cal.App.2d 813, 817 [9 Cal.Rptr. 147].) We fail to see how the detailed information called for by this interrogatory with reference to defendants' agreements in connection with the production, financing and/or distribution of the episode, or of the whole series for that matter has any relevance as to the alleged copying of plaintiff's material. In our opinion the

respondent court abused its discretion in ordering the defendants, CBS and Plautus, to answer this interrogatory.

Interrogatories 46, 47 and 49, quoted in full above, are related to each other and can be considered together here. Interrogatory 46 calls for detailed information as to each item of defendants' "income, revenue, and gross receipts" in connection with the episode of the series which is the subject of plaintiff's complaint, including the identification of each contract, agreement or other document which would evidence or furnish a basis for such information. Interrogatory 47 calls for similar detailed information with respect to defendants' costs expended or incurred in connection with that episode. Interrogatory 49 calls on defendants to state the amount of profit realized to date from the one episode. Plaintiff contends that the information here sought is relevant to the issue of damages. She also contends that the information sought by interrogatory 39 is relevant to the same issue.

It is now well settled that, in an action at law for damages, the plaintiff is entitled in appropriate pretrial discovery proceedings to seek information directly relevant to the issue of damages even though the issue of defendant's liability has not been tried and determined. (*Hauk* v. *Superior Court*, 61 Cal.2d 295, 299 [38 Cal.Rptr. 345, 391 P.2d 825]. See also, *Coffelt* v. *Superior Court*, 254 Cal.App. 2d 884, 887 [62 Cal.Rptr. 636].)

Defendants concede that their profits are a proper element to be considered in assessing damages in plagiarism and similar cases, under the rules stated in cases such as *Sheldon* v. *Metro-Goldwyn Pictures Corp.*, 309 U.S. 390 [84 L.Ed. 825, 60 S.Ct. 681]. In *Sheldon* plaintiff sought damages for infringement of his copyrighted material and its incorporation in a motion picture. The court held that, in computing an award of profits against an infringer there may be an apportionment of the total profits from the motion picture so as to give the owner of the copyright only that part of the profits found to be attributable to the use of the copyrighted material as distinguished from what the infringer himself has supplied. There, as here, defendant contended that the material taken by infringement contributed in but a small measure to the production and success of the motion picture. The court there held that whatever apportionment is to be made is left to the appropriate exercise of the equity jurisdic-

tion of the court upon an accounting to determine the profits made from the infringement.[5]

Under the rules stated above, there is no doubt that the information called for by interrogatory 49 is relevant to the issue of damages in the pending litigation and that plaintiff is entitled to appropriate pretrial discovery with respect thereto.

Defendants further object to this interrogatory on the ground that it calls for "confidential information." We know of no case holding that this is a proper ground for objection to an otherwise proper interrogatory. Assuming that the information called for by this interrogatory is of a confidential nature which defendants do not want to have included in a public record, they presumably could have applied for a protective order under section 2019, subdivision (b) of the Code of Civil Procedure. No such application was made. (Cf. *Ryan* v. *Superior Court*, 186 Cal.App.2d 813, 820 [9 Cal.Rptr. 147].) An objection to any interrogatory under section 2030 is not the equivalent of a motion for a protective order.

Defendants also objected to interrogatory 49 on the ground that the interrogatory "is not susceptible of answer as profit and loss was not, and could not be, calculated with respect to individual episodes of the series." Their argument, unsupported by the citation of any authority, is that because of the way the series was sold and money expended "this interrogatory calls for a summation of all receipts and disbursements over a period of four television seasons. Indeed, petitioners could no more calculate profit on one episode of 'The Defenders' without considering the receipts and disbursements (including overhead and the like) for the entire series than could the Ford Motor Company calculate the profit on a single Mustang without taking into consideration the receipts and disbursements for the entire model run. Further, if petitioners were to list all such financial information and calculate arbitrary 'profit-per-episode' amounts by dividing total profit (or loss) by the number of episodes, the resultant arbitrary figures would have no logical or other realistic relation-

---

[5] "The controlling fact in the determination of the apportionment was that the profits had been derived, not from the mere performance of the copyrighted play, but from the exhibition of a motion picture which had its distinctive profit-making features, apart from the use of any infringing material, by reason of the expert and creative operations involved in its production and direction." (*Sheldon* v. *Metro-Goldwyn Pictures Corp.*, 309 U.S. at p. 406 [84 L.Ed. at p. 834, 60 S.Ct. 681].)

ship to plaintiff's alleged damages, if any, because it would bear no relationship whatsoever to the quality of the episode in question or plaintiff's alleged literary property. This is true because: (1) Plautus sold to C.B.S. under a contract predating the production of the episode in question by more than two years; (2) Plautus' profit necessarily depended on public acceptance of the series as a whole and its own ability to control costs of production, and C.B.S.'s profits depended on the acceptance by sponsors and the viewing public of the series as a whole.''

▇▇▇ No extended discussion of this objection seems necessary. As pointed out above, petitioners concede, on the authority of *Sheldon* v. *Metro-Goldwyn Pictures Corp., supra,* 309 U.S. 390 [84 L.Ed. 825, 60 S.Ct. 681], that if plaintiff can establish defendant's liability, she will be entitled to recover that portion of the profits of the series as a whole which can be equitably attributed to the episode in which her property was used. ▇▇▇ It is no answer to the problem which confronts defendants to say that their records which might show the profit or loss as to any one episode in the series have not been segregated, or that it is unrealistic to divide the total profit (or loss) from the entire series by the number of episodes involved. Nor is it any answer to say that it is difficult to ascertain the profit, if any, attributable to the one episode as an element to be considered in awarding damages to plaintiff. ▇▇▇ The general rule is that ''A party who has breached a contract or committed a tortious act is generally not permitted to escape his liability in damages therefor simply by reason of difficulty in the ascertainment of the damage to the plaintiff.'' (14 Cal.Jur.2d, Damages, § 65, pp. 690-691.) ▇▇▇ Under the rule enunciated in *Hauk* v. *Superior Court, supra,* 61 Cal.2d 295, the respondent court did not abuse its discretion in ordering defendants to answer interrogatory 49. We are not concerned here with how defendants compute their profits from the one episode in order to answer the interrogatory but only with their obligation to do so.

▇▇▇ Interrogatories 46 and 47 call on defendants to state the source, date and amount of each item of income, revenue and gross receipts, and each item of cost expended or incurred, in connection with the one episode which is the subject matter of plaintiff's action, and, in each instance, to identify ''each written contract, agreement or other document

which would evidence or furnish a basis for such information.'' Defendants objected to each of these interrogatories on the ground that the information called for is not relevant to the subject matter of the action, and is not likely to lead to the discovery of admissible evidence.

In our opinion the respondent court abused its discretion in ordering defendants to answer these interrogatories. As we read them, these interrogatories ''are reasonably subject to objection as calling for the disclosure of matters so remote from the subject matter of the action as disclosed by the issues framed by the pleadings as to make their disclosure of little or no practical benefit to the party seeking disclosure.'' (*Ryan* v. *Superior Court, supra,* 186 Cal.App.2d 813, 817.) On their face as the record now stands, they place on defendants a wholly unwarranted burden and expense. Insofar as interrogatory 39 purports to relate to the issue of damages, it is subject to the same criticism.

Plaintiff contends, in substance, that she is not required under the cases to be satisfied merely with the summaries or other documentation which defendants may furnish in answer to interrogatory 49 setting forth the profits attributable to the episode; she is entitled, she says, to the underlying documentation with third parties which would enable her to determine whether the accounting data prepared by defendants in answer to interrogatory 49 is correct, and permit her to cross-examine defendants at the trial with respect to the soundness of their accounting approach and the accuracy of their accounting detail, and to use such documentations for impeachment purposes if necessary. *Associated Brewers Distributing Co.* v. *Superior Court,* 65 Cal.2d 583 [55 Cal.Rptr. 772, 422 P.2d 332], on which plaintiff relies is distinguishable on the facts and does not support this contention. There the court held that the documents sought to be inspected were relevant to the subject matter and material to the issues to be tried.[6] That is not the case here. In our opinion *West Pico*

---

[6]In *Associated Brewers Distributing Co.* v. *Superior Court, supra,* plaintiff sued to recover a specific sum allegedly due for goods sold and delivered. Defendant alleged by way of counterclaim that it had a setoff by reason of plaintiff's alleged breach of an oral agreement by plaintiff not to terminate the distributorship without notice, and to inform defendant of any cause for termination and to give it time to remove the cause. The court there held that defendant was entitled to examine some 26 documents in plaintiff's possession which were admittedly relevant to the question of the existence of the oral agreement and the termination of the distributorship without cause.

*Furniture Co.* v. *Superior Court,* 56 Cal.2d 407 [15 Cal.Rptr. 119, 364 P.2d 295], is also distinguishable on the facts. There again, defendant and cross-complainant asked plaintiff in a proper interrogatory only to identify the sales contracts in its possession which were the subject of its cross-complaint.

In holding that the respondent court abused its discretion in ordering defendants to answer interrogatories 39, 46 and 47, we are impressed with the fact that this is not an action for an accounting except in a very limited sense. It may well be that after defendants, in answer to interrogatory 49, have stated how much profit or loss is attributable to the one episode involved, as they see it, plaintiff may wish to question some part of the accounting process by which defendants determined the answer. In that case, further discovery as to the underlying documents may be in order. As the case now stands, we cannot say that the detailed information and documentation as to defendants' contracts relating to the production, financing and distribution of the entire series or as to its receipts and disbursements, even in connection with the one episode in the series, is relevant to the subject matter of the pending litigation.

Let a peremptory writ of prohibition issue commanding the respondent court to refrain from enforcing its order requiring petitioners to answer plaintiff's interrogatories 39, 46 and 47. In other respects the petition is denied.

Herndon, Acting P. J., and Fleming, J., concurred.