[Civ. No. 42176. Second Dist., Div. Five. July 22, 1974.]

HELEN J. DEAILE, Plaintiff and Appellant, v.
GENERAL TELEPHONE COMPANY OF CALIFORNIA,
Defendant and Respondent.

**COUNSEL**

Delmer, Perona, Langer & Bergkvist, Demler, Perona, Langer, Berg-kvist, Lauchengo & Levine, Peter A. Lewine and Major Alan Langer for Plaintiff and Appellant.

Morgan, Wenzel & McNicholas and John P. McNicholas for Defendant and Respondent.

**OPINION**

**STEPHENS, J.**—Plaintiff (Helen J. Deaile) brought suit against defendant (General Telephone Company) for defamation, intentional infliction of emotional distress, and wrongful discharge from employment. Plaintiff appeals from a judgment entered by the trial court which ordered that plaintiff take nothing by her complaint and that defendant be awarded costs.

Plaintiff began working for defendant's predecessor in 1946, and at the time of the incidents involved in the instant controversy she had achieved the position of chief operator (a managerial position) in the Redondo Beach facility of defendant company. On Friday, May 1, 1970, plaintiff's immediate superior, John Pettey, became aware that plaintiff claimed to have injured her back and was absent from work. Pettey attempted to

contact plaintiff. Later that same day he called her at her residence several times but the phone was not answered. Pettey also made several phone calls to plaintiff at her residence on Saturday, Sunday and Monday and received no response. Plaintiff returned to work on the following Tuesday. On this day Pettey spoke with plaintiff, though he could not recall the substance of the conversation. In any event, the subject of the absences was not discussed. On May 15, a Friday, Pettey spoke to plaintiff and asked her where she had been on Friday, May 1, the following weekend, and Monday, May 4. At first plaintiff stated that she had gone to her chiropractor on Friday and Monday and had been home on Saturday and Sunday. However, after Pettey told her of his calls and asked to speak to her doctor, plaintiff admitted that she had gone to the mountains and asked Pettey to "cover" for her. Pettey refused. Plaintiff then asked Pettey if she could change the time off from sick status to excused time. Pettey was noncommittal but said he would check. Pettey and his superior, Bob McClendon, did some further investigating in order to ascertain whether similar incidents had occurred in the past with respect to plaintiff's absences from work. McClendon testified that he had been informed once when plaintiff was absent from work that she was snowed-in in the mountains and was taking another day of vacation time. On checking, McClendon discovered that the time off had not been originally reported as vacation time but was later changed to reflect that it was taken as vacation time. Other instances of similar conduct were averted to by Pettey and McClendon in their testimony but were not developed.

Over the May 15 weekend, the substance of Pettey's conversation with plaintiff and the results of his and McClendon's investigations were reported to their superiors. The decision to discharge plaintiff was made by defendant. On the following Monday, plaintiff was told that she could either retire, quit, or be fired. Plaintiff chose retirement.

At this point in time, it was apparently decided that the reasons for plaintiff's forced retirement would be confined to management personnel. However, approximately a week later Petty and McClendon met with the supervisors[1] of the facility which plaintiff had headed. The meeting was called to correct some rumored misinformation regarding the reasons for plaintiff's forced retirement. During the meeting, Pettey and McClendon told the supervisors that plaintiff had committed a breach of ethics in "that sick benefit papers were put in" when they shouldn't have been; that plaintiff had falsified records; that plaintiff's actions were akin to thievery;

---

[1]The supervisors comprise an echelon of management which was below that of plaintiff. They supervised the day-to-day operation of the Redondo Beach facility.

and that there were indications that this was not the first time plaintiff had done these things. The supervisors were also told to relate this to the operators[2] if the operators had misconceptions[3] as to what had happened. Subsequently, pursuant to defendant's instructions, one of the supervisors told a number of operators the reasons for plaintiff's forced retirement.

In the main, plaintiff contends (1) the defense of privilege proffered by defendant was not properly established; (2) the court erroneously dismissed plaintiff's second and third causes of action; and (3) the court erroneously denied plaintiff's motion to compel answers to certain of plaintiff's interrogatories.[4]

■ In considering the first argument that the defense of privilege was not properly established, we note that the qualified or conditional privilege found in Civil Code section 47, subdivision 3[5] and relied upon by defendant is recognized where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest. (*Fairfield* v. *Hagan,* 248 Cal. App.2d 194 [56 Cal.Rptr. 402].) ■ The undisputed evidence shows that all recipients of the allegedly libelous communications were in the employ of defendant and worked at the same facility which plaintiff had managed, or were plaintiff's superiors. Furthermore, the factors surrounding plaintiff's forced retirement were only disseminated in an effort to preserve employee morale and job efficiency. Under these circumstances the recipients, as well as defendant, were "interested" persons within the meaning of section 47, subdivision 3, of the Civil Code. (See *Brewer* v. *Second Baptist Church,* 32 Cal.2d 791 [197 P.2d 713] (members of church have common interest in church matters); *DeMott* v. *Amalgamated Meat Cutters,* 157 Cal.App.2d 13, 27 [320 P.2d 50] (statements to union members by union officials in dispute over policies and administration are privileged); *Bander* v. *Metropolitan Life Ins. Co.,* 313 Mass. 337 [47 N.E.2d 595, 599] (statement by supervisor to field agents that a fellow agent was

---

[2] The operators are classified as the hourly salaried personnel.

[3] One of the misconceptions involved was that plaintiff was discharged by defendant in order to preclude her from getting her retirement benefits.

[4] On appeal no contention is raised that the judgment rendered against plaintiff on her claim of wrongful discharge was erroneous. We thus treat the contention as abandoned.

[5] Civil Code section 47, subdivision 3: "A privileged publication or broadcast is one made— . . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

guilty of forgery is privileged); See *Biggins* v. *Hanson,* 252 Cal.App.2d 16, 20 [59 Cal.Rptr. 897].) ■ However, the privilege available under section 47, subdivision 3, may be lost if the defendant abuses the privilege by excessive publication or the inclusion of immaterial matters which have no bearing upon the interest sought to be protected (*Biggins* v. *Hanson, supra;* Prosser, The Law of Torts (4th ed.) § 115, p. 792) or if the uttered statements are actuated by malice. (*Cunningham* v. *Simpson,* 1 Cal.3d 301, 308 [81 Cal.Rptr. 855, 461 P.2d 39].)

■ In the instant case, the allegedly defamatory statements were clearly privileged, and there is substantial evidence that their utterance to defendant's employees was not occasioned by "actual" or "express" malice on the part of defendant. These statements all related to the reasons for plaintiff's forced retirement. As such, they were of a kind reasonably calculated to protect or further a common interest of both the communicator and the recipient. (*Fairfield* v. *Hagan, supra; DeMott* v. *Amalgamated Meat Cutters, supra; Cunningham* v. *Simpson, supra.*)

Nor do we accept plaintiff's contention that malice existed to defeat the privilege because defendant did not have reasonable grounds or "probable cause" to believe the uttered statements to be true. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 418 [42 Cal.Rptr. 449, 398 P.2d 785]; *Brewer* v. *Second Baptist Church, supra,* at p. 799.) The question of defendant's state of mind was one of fact for the jury to determine. (*Brewer* v. *Second Baptist Church, supra.*) In the instant case, plaintiff claimed to have suffered a back injury which precipitated her absence from work. Then, in order to show that defendant did not have a reasonable belief that the allegedly libelous statements were true, she has tenaciously seized upon a statement by Pettey that he had a doubt or two as to whether plaintiff had in fact injured her back and on this point had not reached a conclusion one way or the other. However, the question of whether plaintiff had in fact injured her back is not material to the issue of the propriety of defendant's conduct. Pettey testified that plaintiff told him a lie, admitted to him that she had lied, asked him to cover up the situation and to allow her to change the sick-benefit status to excused time off. At trial, plaintiff admitted that she had been at the mountains on Friday, May 1, through Monday, May 4.

Plaintiff also takes exception to defendant's statement that she had falsified records in the past in the same manner as had caused her forced retirement. However, defendant's agent, McClendon, testified that he had become apprised of a previous instance when a business record relative to sick pay had been changed by plaintiff. Both Pettey and McClendon

testified that there were other indications of similar conduct by plaintiff, although they were not called upon to elaborate. ■ Once the defense of privilege is made out, as here, the plaintiff has the burden of defeating it by showing that the privilege has been abused or that malice existed on the part of the defendant. (*Freeman* v. *Mills,* 97 Cal.App.2d 161, 167 [217 . P.2d 687]; Witkin, Summary of Cal. Law (8th ed.) Torts, § 302, pp. 2572-2573.) Plaintiff failed to meet that burden. Plaintiff apparently labored under the misconception that the type of malice which is implied by law from the publication of defamatory materials (Witkin, Summary of Cal. Law, Torts, § 271, pp. 2542-2543) also operates to salvage her cause of action after defendant made out a case for the assertion of the privilege found in Civil Code section 47, subdivision 3. As stated in *Freeman* v. *Mills,* 97 Cal.App.2d 161, 167 [217 P.2d 687]: "Where it appears without conflict that the publication, if made without malice, was a privileged communication to an interested person within the meaning of section 47, subdivision 3, malice becomes the gist of the action and it must exist as a fact before the cause of action will lie. [¶] It affirmatively appeared in the proof of plaintiff's case that the communication was qualifiedly privileged. Hence, malice is not presumed; and, in order to establish a cause of action, it was necessary that plaintiff prove the existence of malice." (See also *Mullins* v. *Brando,* 13 Cal.App.3d 409, 420 [91 Cal.Rptr. 796]; Prosser, *supra,* pp. 771-772, 794.) The jury was entitled to disbelieve plaintiff's claims that the uttered statements were not privileged in that they were maliciously induced.

Plaintiff's second assertion of error is that prior to trial the court erroneously dismissed plaintiff's second and third causes of action. The reason for the dismissal is that two of the named defendants, Pettey and McClendon, were never served, and the trial judge felt that since they were no longer parties to the action, those causes of action, which were specifically directed to the conduct of Pettey and McClendon towards plaintiff, should be dismissed. However, by reference, plaintiff had incorporated in those causes of actions allegations of an agency relationship between defendant company and Pettey and McClendon. Thus, while the plaintiff had decided not to proceed directly against Pettey and McClendon for their conduct, she did manifest a desire to hold defendant company liable for its acts as a principal. ■ The dismissal of these causes of action was erroneous.[6]

---

[6]Defendant has attempted to rectify the court's erroneous ruling by arguing that a compromise and release signed by plaintiff barred her from recovering for injuries claimed in her third cause of action (mental suffering and anguish). However, the release was never pled as an affirmative defense, nor was it raised by either party at trial save for one instance during an in-chambers conference with the judge. However, during that conference, before the judge would accept the release, he requested that the parties furnish some authorities on a particular point raised by plaintiff in

However, we are of the opinion that the error is not such as to require reversal. According to plaintiff, the second cause of action alleges the intentional infliction of emotional distress. This cause of action, however, merely restates the allegations contained in the first cause of action and the fact that the statements were uttered at a different time and place. Notwithstanding the fact that the phraseology used was somewhat different, the concept was the same—that plaintiff had committed an act akin to thievery in falsifying company records. Under these circumstances and in view of the jury's disposition of the first cause of action, it is clear that plaintiff was not prejudiced by the dismissal.

The third cause of action does allege intentional infliction of emotional distress. There, it was alleged that plaintiff's superior called plaintiff into his office and told her that she was a liar and a thief for falsifying company records. Moreover, it was alleged that following the meeting, Pettey and McClendon attempted by various means to discredit plaintiff in the eyes of her fellow employees.

The privileges afforded by section 47 of the Civil Code are not limited to actions for defamation. (See *Bledsoe* v. *Watson,* 30 Cal.App.3d 105, 110 [106 Cal.Rptr. 197]; *Pettitt* v. *Levy,* 28 Cal.App.3d 484, 488-489 [104 Cal.Rptr. 650].) The privilege is provided to protect and to further the particular interests and activities safeguarded by the privilege. Those interests and activities are deemed to outweigh the correlative injury caused by their expression that is otherwise protected by the law of tort. (Holmes, *Privilege, Malice and Intent* (1894) 8 Harv.L.Rev. 1; Prosser, *supra,* § 114, p. 776.)

Clearly, an employer is privileged in pursuing its own economic interests and that of its employees to ascertain whether an employee has breached his responsibilities of employment and if so, to communicate, in good faith, that fact to others within its employ so that (1) appropriate action may be taken against the employee; (2) the danger of such breaches occurring in the future may be minimized; and (3) present employees may not develop misconceptions that affect their employment with respect to certain conduct that was undertaken in the past. Where an employer seeks to protect his own self-interest and that of his employees in good faith and without abusing the privilege afforded him, the privilege

---

objecting to introduction of the release. As far as can be determined from the record, that was never done and no further attempt was made to introduce the release. Under such circumstances, defendant may not raise the issue of a release for the first time on appeal. (*Hildebrand* v. *Stonecrest Corp.,* 174 Cal.App.2d 158, 164-165 [344 P.2d 378].)

obtains even though it is substantially certain that emotional distress will result from uttered statements. (Cf., *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; Rest.2d Torts, § 46, com. g.)

Relative to the first cause of action in the instant case, the jury rejected plaintiff's contention that defendant had abused the privilege afforded by section 47, subdivision 3 to protect the common interest of both employee and employer, or was actuated by malice. For all intents and purposes, the statements made to the supervisors which were the subject of the first cause of action were identical to those claimed to have caused emotional injury in the third cause of action. Under the facts of this case, defendant was privileged to communicate plaintiff's transgressions to interested third parties. The privilege also applies to questions asked by defendant of plaintiff about the actions which precipitated her forced retirement.

Plaintiff also contends that the trial court improperly limited discovery.[7] During pretrial, plaintiff filed the following interrogatories: "1. State the names and addresses of each woman employee of General Telephone Company, Hermosa Beach [8] facility in May 1970. 2. State which of these people are still employed by General Telephone Company and where they are employed." Defendant objected to these interrogatories on the grounds that the questions were oppressive, burdensome, unreasonable, and unlikely to lead to discovery of relevant evidence. During the hearing of plaintiff's motion to compel answers, the trial judge suggested that the questions propounded be modified, and he proposed to the parties certain modifications. However, attempts to secure a stipulation to modified versions of the challenged interrogatories failed. The court then denied the motion to compel further answers.

With respect to the original interrogatories, it is clear that plaintiff requested disclosure of both irrelevant and relevant information. In *Columbia Broadcasting System, Inc.* v. *Superior Court,* 263 Cal.App.2d 12, 19, the court stated [69 Cal.Rptr. 348]: " '. . . . [I]f interrogatories are reasonably subject to objection as calling for the disclosure of matters so remote from the subject matter of the action as disclosed by the issues framed by the pleadings as to make their disclosure of little or no practical

---

[7] A discovery order may be reviewed on appeal from the final judgment on the merits. (*Jaffe* v. *Albertson Co.,* 243 Cal.App.2d 592, 617 [53 Cal.Rptr. 25]; *Woolridge* v. *Mounts,* 199 Cal.App.2d 620, 628 [18 Cal.Rptr. 806].)

[8] The "Redondo Beach" facility, as it was commonly referred to by defendant and its employees, was actually located within the city limits of Hermosa Beach.

benefit to the party seeking the disclosure or if to answer them would place a burden and expense upon the parties to whom the interrogatories are propounded which should be equitably borne by the propounder or if the interrogatories are so framed as to require the disclosure of relevant as well as irrelevant matter, the trial court in the exercise of its discretion may refuse to order such interrogatories answered. An appellate court may not substitute its judgment for that of the trial court unless there is no room for the exercise of discretion by that court.' (*Ryan* v. *Superior Court,* 166 Cal.App.2d 813, 817 [9 Cal.Rptr. 147].) In short, as Justice Murphy said for the court in *Hickman* v. *Taylor,* 329 U.S. 495, 507 [91 L.Ed. 451, 460, 67 S.Ct. 385], 'discovery, like all matters of procedure, has ultimate and necessary boundaries.' " ■ As propounded by plaintiff, each of the original questions was subject to proper objection by defendant on the grounds that it called for information which was not relevant to the subject matter of the action and which was not likely to lead to the discovery of admissible evidence. (Code Civ. Proc., § 2016, subd. (b); *Borse* v. *Superior Court,* 7 Cal.App.3d 286 [86 Cal.Rptr. 559]; *Chalco-California Corp.* v. *Superior Court,* 59 Cal.2d 883 [31 Cal.Rptr. 593, 382 P.2d 865]; *Columbia Broadcasting System, Inc.* v. *Superior Court, supra.*)

We are of the opinion that the court did not abuse its discretion by denying in toto the motion to compel further answers. Generally, the court should tailor its discovery orders to the needs of the particular case. Ordinarily, it would constitute an abuse of discretion to deny in toto a motion to compel further answers merely because some of the interrogatories were objectionable. (*Coy* v. *Superior Court,* 58 Cal.2d 210 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; *West Pico Furniture Co.* v. *Superior Court,* 56 Cal.2d 407 [15 Cal.Rptr. 119, 364 P.2d 295].) Here, however, the questions were objectionable in their entirety. These interrogatories related to *all* women employees of the Hermosa Beach facility as of May 1970, and are of the type which was disapproved in previous cases. (See *Borse* v. *Superior Court, supra; City of Los Angeles* v. *Superior Court,* 196 Cal.App.2d 743 [16 Cal.Rptr. 851]; *Ryan* v. *Superior Court,* 186 Cal.App.2d 813 [9 Cal.Rptr. 147].) The court was not under any obligation to redraft plaintiff's interrogatories so that proper questions would be presented for consideration. (*Ryan* v. *Superior Court, supra.*)

■ At oral argument plaintiff vigorously contended that certain requested instructions were erroneously denied. There is no merit to this contention. Plaintiff's proposed instructions were practically verbatim du-

plications of sections 599, 600, 601, 604 and 605 of Restatement, Torts.[9] We are of the opinion that the substance of plaintiff's proposed instructions was set forth and given to the jury by the modified instructions based on BAJI No. 6.94, section 47 of the Civil Code, and section 593 of Restatement, Torts.[10] Plaintiff's proposed instruction based upon section 599 (Rest., Torts) was in substance covered by the given instruction which was a modified version of section 593 (Rest., Torts); the substance of the proposed instructions based on sections 600, 601, and 605 of Restatement, Torts, was embodied within the modified BAJI instruction relative to "malice" which was given to the jury; finally, the substance of the

---

[9]The proposed instructions are as follows:

"One who publishes false and defamatory matter of another upon a conditionally privileged occasion is liable to the other if he abuses the privilege." (Based upon § 599.)

"One who upon a conditionally privileged occasion publishes false and defamatory matter of another abuses the privilege if, although believing the defamatory matter to be true, he has no reasonable grounds for so believing." (Based upon § 601.)

"One who, upon an occasion conditionally privileged for the publication of false and defamatory matter to a particular person or persons, knowingly publishes such matter to a person to whom its publication is not otherwise privileged thereby abuses the privilege unless he reasonably believes that such publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged." (Based on § 604.)

"One who upon a conditionally privileged occasion publishes false and defamatory matter of another abuses the privilege if he publishes defamatory matter which he does not reasonably believe to be necessary to accomplish the purpose for which the privilege is given." (Based on § 605.)

"One who upon a conditionally privileged occasion publishes false and defamatory matter of another abuses the privilege if he does not believe in the truth of the defamatory matter." (Based on § 600.)

[10]BAJI No. 6.94 as modified and given read: "The words 'malice' and 'malicious,' as used in these instructions mean a wish to vex, annoy, or injure another person. Malice means the attitude or state of mind which actuates the doing of an act for some improper or wrongful motive or purpose. It does not necessarily require that the defendant be angry or vindictive or bear any actual hostility or ill will toward the plaintiff.

"Malice may be proved by direct evidence or it may be inferred from circumstances such as evidence of lack of probable cause, or the defendant's bad faith, or the absence of an honest and sincere belief by the defendant that the defamatory statements made of the plaintiff were justified by the existing facts and circumstances."

The instruction based upon Civil Code section 47 read: "A privileged publication is one made in a communication, without malice, to a person interested therein, (a) by one who is also interested, or (b) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (c) who is requested by the person interested to be given the information."

The instruction patterned from section 593, Restatement, Torts read: "One who publishes false and defamatory matter of another is not liable therefor if (a) it is published upon a conditionally privileged and (2) that occasion is not abused."

proposed instruction based upon section 604 (Rest., Torts) was given to the jury in the instruction patterned from section 47 of the Civil Code.

While the instructions given by the trial court to the jury with respect to "malice" and abuse of privilege were to some extent cryptic, they did set forth the applicable law correctly and adequately. The trial court was not obligated to give plaintiff's proposed instructions which, although more precise, were merely repetitious of other instructions. ▮ The duty of the court is fully discharged if the instructions in the court's own language embody all the points of law which are material to the case. (4 Witkin, Cal. Procedure, Trial, § 193.)

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.