[Civ. No. 45308. First Dist., Div. One. May 1, 1980.]

BOBBY J. CARTER et al., Plaintiffs and Appellants, v.
VINCENT W. CANGELLO, Defendant and Respondent.

COUNSEL

Munck, Styles, Benson & Skinner and Stephen C. Skinner for Plaintiffs and Appellants.

Boornazian, King, Jensen & Garthe and Gregory J. Rockwell for Defendant and Respondent.

OPINION

**GRODIN, J.**—Bobby and Joyce Carter brought suit against Vincent W. Cangello, a physician, because of certain medical procedures which he performed on their daughter, Debra. The procedures were performed with Debra's consent, and so far as appears from the record they were performed competently and successfully, with results beneficial to her health. The Carters' complaint was that Debra was incapable of giving legal consent to the procedures, and that even if their consent was unnecessary the physician's conduct was so extreme and outrageous as to be tortious as to them. The trial court granted summary judgment in favor of Dr. Cangello, and the Carters have appealed.

The first question is whether Debra could legally consent to the procedures. She was a minor at the time, age 17. Civil Code section 34.6 provides that "a minor 15 years of age or older who is living sepa-

rate and apart from his parents or legal guardian...and who is managing his own financial affairs, regardless of the source of his income, may give consent to hospital care or any X-ray examination, anesthetic, or medical or surgical diagnosis or treatment...." The Carters concede that Debra was living away from home at the time she gave consent, but contend that she was not "managing [her] own financial affairs" within the meaning of section 34.6. Uncontradicted evidence before the court on the motion for summary judgment revealed that while the Carters provided part of Debra's income by paying for her private schooling and certain medical care, Debra made her own financial decisions. In her deposition she testified that she had not consulted her parents about financial decisions, that she did not receive spending money from them, and that since she moved away from them they did not buy her any clothes. Mrs. Carter, in her deposition, testified that Debra had not consulted her on how she should spend her money. In response to a request for admissions of fact from Dr. Cangello, appellants admitted they did not know the precise financial arrangements of their daughter. Debra was living in the home of a woman, Ms. Lemkuhl, who gave her free room and board in exchange for household chores. Ms. Lemkuhl in her affidavit stated she did not control the way Debra spent her money and as far as she was aware Debra made her own financial decisions and managed her own financial affairs.

The Legislature has made clear through the statutory phrase "regardless of the source of his income" that a minor living away from home is not deprived of the power to consent to medical treatment simply because his parents supply a portion of the funds necessary to maintain him. The kind of financial management with which the Legislature was concerned, therefore, must have to do with day-to-day decisions as to how much to spend on what. (See Comment, *Medical Care and the Independent Minor* (1970) 10 Santa Clara Law. 334, 338.) On that issue, appellants presented no triable issues of fact.

Appellants argue in the alternative that they were entitled to proceed to trial under the authority of *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216]. That case held that an employee stated a cause of action for intentional infliction of emotional distress when he alleged that his employer, "standing in a position or relation of authority over plaintiff, aware of his peculiar susceptibility to emotional distress, and for the purpose of causing plaintiff to suffer such distress, intentionally humiliated plaintiff, insulted his race, ig-

nored his union status, and terminated his employment, all without just cause or provocation." (2 Cal.3d at pp. 498-499.) The theory does not fit. Among other things, there is no allegation here that appellants were peculiarly susceptible to emotional distress, or if they were that Dr. Cangello was aware of that fact; nor is there such a relationship between Dr. Cangello and appellants as to bring the principles of *Alcorn* into play. (2 Cal.3d at p. 498, fn. 2.) Moreover, Dr. Cangello was privileged under section 34.6 to act on Debra's consent to surgery and such privilege insulates him from liability for infliction of emotional distress. (Rest.2d Torts, § 46, com. g; *Deaile* v. *General Telephone Co. of California* (1974) 40 Cal.App.3d 841, 849-850 [115 Cal.Rptr. 582].) Appellants set forth no facts in their counteraffidavits to show that Dr. Cangello exercised his privilege in an outrageous manner. (Cf. *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 395 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) If the parents of a consenting minor could nevertheless sue the treating physician because the treatment was against their wishes, section 34.6 would be meaningless.

Affirmed.

Racanelli, P. J., and Elkington, J., concurred.